McKaig v. McCallum.

---

HUGH McKAIG

*v.*

JANE McCALLUM, DAVID McCALLUM et ux. et al.

[Submitted June 18th, 1900. Decided June 23d, 1900.
Filed February 11th, 1901.]

In foreclosure the master reported as prior to subsequent mortgages certain docketed judgments, which were invalid as liens for want of the affida-vit required by section 72 of the Justice's Court act (*Gen. Stat. p. 1878*), which the legal profession and the attorneys for the mortgagees had assumed was abrogated by the affidavit provided by the amendment of April 4th, 1892 (*Gen. Stat. p. 1898*), until the contrary was established by decisions, one of which was by the court of errors and appeals just subsequently to the master's report. The report was confirmed without objection as to the validity of the docketing of such judgments, and the mortgagees remained silent for two years before moving to modify the master's report as to such priorities, when the property had been sold on the basis of the validity of the judgments as liens.—*Held*, that the priorities determined by the master and confirmed by decree should not be disturbed at the instance of mortgagees because of the decisions as to the proper affidavit for docketing judgments, as they had their day in court, and failed to make their objections.

---

Heard on petition for surplus money, and on motion to vary

an order of reference made thereon; and on a cross motion to vary the master's report of priorities and the decree confirming the same.

*Mr. Theodore B. Booraem,* for the defendant Polhemus, mortgagee, for the motion to vary the master's report and decree.

*Mr. Alan H. Strong,* for the judgment creditors, *contra.*

PITNEY, V. C.

The bill was filed to foreclose three several mortgages held by the complainant upon the mortgaged premises, and which were first in order of priority. The equity of redemption was held by the defendant McCallum, subject to a life estate in his mother, the defendant Jane McCullum. Complainant's mortgages were executed by all these parties.

Complainant, by his bill, made parties defendant several judgment creditors of David McCallum, and also two other mortgagees, to wit, Peter G. Polhemus and Frederick Weigel, who held mortgages subsequent in date to the docketing of the judgments.

The bill set out all the encumbrances, including the several judgments, which latter were all recovered in the court for the trial of small causes, and docketed, or attempted to be docketed, in the court of common pleas of the county where the land is situate.

The statement of the judgments in the bill is in the ordinary form, and that the same were docketed in the court of common pleas, and alleging that they were a lien, if at all, subject to the complainant's three several mortgages.

The answer of Polhemus admits that there were certain judgments recovered and docketed against McCallum, as set out in the bill of complaint, "but as to the priority of the said judgments and the amounts respectively due thereon the defendant is unable to say, and prays that the amounts and their respective priorities may be determined with due regard to the rights and interest of the defendant as mortgagee."

Under that answer an order of reference was made to a

master, in the usual form, to ascertain the amount due the complainant and to the several defendants, judgment creditors and mortgagees, and "also to ascertain and report the order of priority of the said several mortgages and judgments respectively."

Under that order the master issued summonses to all the encumbrancers, and they all appeared except one judgment creditor. The master reported the amount due on the complainant's three mortgages; then the amount due to each of the judgment creditors who appeared before him; then the amount due on the mortgages of Polhemus and Weigel; with the priorities of each encumbrance—the three mortgages held by the complainant being first, the judgment in favor of Standish and Telles next, the judgment in favor of Hines next, the judgment in favor of Slack next, the judgment in favor of Edson next; next the mortgage of the defendant Polhemus, and last the mortgage of the defendant Weigel.

On the coming in of that report a decree, called the final decree, was made, that the "said report and all the matters and things therein contained do stand ratified and confirmed," and that the mortgaged premises be sold to raise and satisfy the amount due the complainant, and any sum beyond the amount due the complainant, with costs and interest, should be brought into court to abide the order of the court.

Under that decree an execution was issued and returned, which produced sufficient to pay the complainant in full and $679.40 besides, which is the fund here in controversy.

The reason why the decree did not direct, in the first place, that the money should be paid to the several judgment creditors and other mortgagees was that the interest of the defendant Jane McCallum should be satisfied before any of the encumbrances, except those of the complainant. There was no express-declaration that the judgment creditors were entitled to share in the proceeds of the sale, but the bill and answer of Polhemus, the master's report and decree, are all based upon the idea that they were so entitled.

The motion now made is on behalf of the mortgagee Polhemus, who became the purchaser of the premises, to vary the

McKaig *v.* McCallum.

master's report and also the decree, by declaring that the judgment creditors are not entitled to any part of the fund, by reason of a defect in the proceedings taken in the docketing of their judgments.

The master's report was made on the 1st of March, and was filed on the 2d of April, and the decree thereon was made on the 6th of April, 1898.

The defect in the judgments was that dealt with by the court of errors and appeals in the case of *Grimshaw* v. *Carroll, 33 Vr. 730.* That case, indeed, dealt with the docketing of a judgment from a district court, but it was admitted by the parties at the hearing that the language of the sections applying to district courts and that to justices' courts is substantially the same, and that the docketed judgments herein are invalid as liens for want of the affidavit required by section 72 of the Justice's Court act. *Gen. Stat. pp. 1878, 1879.* That section requires that with the certified copy of the proceedings before the justice shall be filed

"an oath or affirmation of the party, his or their attorney or agent making such request, that at the time of filing such transcript a certain amount, not less than ten dollars, is still due, stating the amount, and *that he believes the debtor is not possessed of goods and chattels sufficient to satisfy said amount due.*"

That act was amended by the act of April 4th, 1892 (*Gen. Stat. p. 1898*), which provides:

"That in docketing any judgments from the courts for the trial of small causes in any county of this state, it shall *only* be necessary to file with the clerk of the court of common pleas a statement signed by the justice of the peace before whom the said judgment was recovered in the court for the trial of small causes, under his hand and seal, which statement shall *only* be required to contain the names of the justice before whom such judgment was obtained, and the names of the parties, the amount and date of judgment, and the date of issue and return of the execution, if any, *and an affidavit of the plaintiff, or his attorney, that the said judgment about to be docketed is bona fide, and is still due and unpaid, in whole or in part.*"

Proceedings for docketing judgments in the district courts are regulated by section 77 of the act of 1877 (*Gen. Stat. p.*

McKaig *v.* McCallum.

*1228*), and by sections 4 and 5 of a supplement of March 27th, 1882 (*p. 195*). *Gen. Stat. p. 1260* ¶¶ *256, 257*. The language found in those paragraphs is the prototype of the supplement to the Justice's Court act of 1892.

The several provisions of the District Court and Justice's Court acts, just referred to, had always, up to a decision at the Passaic circuit, January Term, 1898, by Mr. Justice Dixon in *Speer New Jersey Wine Co.* v. *Van Driel, 21 N. J. L. J. 112* (April, 1898), and the decision of the court of errors and appeals, on the 6th of March, 1899, in the case of *Grimshaw* v. *Carroll, supra,* been construed by the profession as dispensing with the necessity of the affidavit provided for in section 72 of the Justice's Court act, and as substituting for that the affidavit provided for in section 169 of the Justice's Court act. The profession, with substantial unanimity, erroneously assumed that the affidavit provided for in these amendments was a substitute for that required in the original act. The decision of Mr. Justice Dixon at the Passaic circuit had not been so far promulgated as to be known to the bar generally, nor had the decision of the court of errors and appeals in *Grimshaw* v. *Carroll* been rendered at the time that the master's report was made in this cause, to wit, March 1st, 1898.

The question is, whether, under these circumstances, it is equitable and just that the priorities determined by the master and affirmed by the decree of the court, should be disturbed in pursuance of the decisions just referred to.

It seems to be sufficiently clear that, under ordinary circumstances, the court may and ought, upon a timely application, to make a change in its determination in obedience to what may be called, in common parlance, a change in the law which has occurred since its first determination.

An illustration of this is found in the history of the case of *Haggerty* v. *Lee,* first reported in *18 Stew. Eq. 1* (before the chancellor), and *p. 255* (before the court of errors and appeals). There the court refused to grant the complainant a preliminary injunction, on the ground that the legal right underlying his application was not clear at law. Afterwards, the defendant in chancery brought an action in the supreme court against the

complainant in chancery, and obtained a judgment, which was fatal to the complainant's contention. After this judgment the equity suit, which had slept in the meantime, was brought to a hearing, and the complainant's bill was dismissed on the strength of the decision of the court at law, as reported in *Haggerty* v. *Lee, 3 Dick. Ch. Rep. 98.* After this decree a writ of error was brought to the judgment of the supreme court, and that judgment reversed by the court of errors and appeals, as reported in *Haggerty* v. *Lee, 25 Vr. 580.* The decision of the court of chancery was made in the February Term, 1891. The decision of the court of errors and appeals, reversing the supreme court, was made at the June Term, 1892. An appeal was then taken from the decision of the chancery court, as reported in *3 Dick. Ch. Rep. 98,* and that decision was reversed, as reported in *5 Dick. Ch. Rep. 464.*

Briefly stated, the result is this: The supreme court decided the question of law which laid at the basis of the complainant's bill against him. The court of chancery then dismissed his bill in accordance with that decision. The court of errors and appeals reversed the supreme court, and then the same court reversed the court of chancery, and granted the complainant his relief.

Those conflicting decisions were between the same parties, upon the same right of action; but I think, by analogy, it should apply to cases where the very point was decided, though between other parties. Thus, if the decision of the supreme court in *Grimshaw* v. *Carroll* had been in favor of the validity of the docketing of the judgment, and in accordance with that judgment a master of this court had found a lien in favor of a docketed judgment, based on precisely the same formalities as that in *Grimshaw* v. *Carroll,* and the matter had not passed beyond the power of this court until after the reversal of the judgment of the supreme court in *Grimshaw* v. *Carroll,* then it would have been within the power of this court to have reconsidered its decision, and decreed in accordance with the latest opinion of the court of errors and appeals.

But in the present case, at the time of this hearing before the master, the validity of the docketing of judgments in the

McKaig *v.* McCallum.

manner done in those cases had never been seriously questioned. The counsel for the subsequent mortgagees had no thought that any such defect existed. There is no contention that he did not know just what formalities had been adopted. He does not contend that he overlooked the fact that the affidavit required by the seventy-second section of the Justice's Court act had not been made. He, in common with the great majority of the counsel of the state, supposed that judgments so docketed were perfectly valid liens; and the question was not raised or discussed before the master. The priorities of the judgments were substantially admitted before him, and the whole proceedings were based upon the idea that they were valid liens.

The counsel for Polhemus relies on this mistaken notion of his as the ground of relief; says that his client ought not to be prejudiced by it. On the other hand, the counsel of the judgment creditors says that the error of opinion was a common one, and that the several solicitors who attended to the docketing of the several judgments were laboring under the same mistaken notion, and that their clients ought not to be prejudiced by their mistake.

The judgment creditors further point out the circumstances that these several judgments were docketed during the first three months of the year 1894. The defendant Polhemus took his mortgage in September, 1896, two and a half years later, with full knowledge of these judgments; and the defendant Weigel took his mortgage in October, 1897, still a year later. That no proceedings by *certiorari* were ever had by either of them to test the validity of the lien of these judgments. Not only did their counsel waive any defects in the docketing at the hearing before the master, but they have lain still from that time—March, 1898—for a period of two years, without moving to vary the master's report and decree, and in the meantime the property has been sold on the basis of the validity of the judgment liens and their priority over the mortgages of the mortgagees now contesting it.

I am unable to find in the delay of the mortgagees to test the validity of the docketing of these judgments, by proceedings for that purpose, and the fact that the premises have been sold

on the basis of their validity, ground for an absolute estoppel. But I do think that those circumstances are proper to be considered, and should have weight in balancing the equities of the case. If the mortgagees had taken proceedings by *certiorari* to test the liens of these judgments as soon as they obtained their mortgages, the judgment creditors might have looked about to amend their position and to have enforced their remedies by execution against chattels before the foreclosure; and if the point had been taken before the master and their liens had been disturbed, they might still have amended, and protected themselves by further bidding at the sheriff's sale. But, as I said, I do not think the loss of those opportunities amount to an absolute estoppel.

However, the question still remains, whether, upon the whole case, considering that the objection is a purely technical one, that it does not arise in an action of ejectment, that the lien of the judgments has been acquiesced in for many years, and the defect now complained of waived by the subsequent encumbrancers when the proper time for urging it was presented; in other words, that the parties now objecting have had their day in court, and then failed to make their objection, it is equitable and just that the rights of the judgment creditors, as ascertained by the decree, should be disturbed.

It is, of course, a matter that addresses itself to the sound discretion of the court, and, exercising that discretion, I come to the conclusion that it is not equitable.

I think this result is in accordance with the disposition manifested by the courts in dealing with a docketing of this kind when attacked by *certiorari* in the case of *Barr* v. *Fleming, 32 Vr. 431.* In that case the docketing of the judgment attacked was subject to the same defect as that found in those here under consideration, but no reason was assigned, in writing, for setting aside the docketing based upon that defect. When it came before the supreme court for consideration, Mr. Justice Dixon, speaking for that court, after pointing out the defect, said that the court did not feel at liberty to decide the question, in view of the special reason assigned and the limited scope of the briefs

submitted. When it came before the court of errors and appeals I am informed that Mr. Strong, for the plaintiff in error, urged the point upon that court; but the court affirmed the judgment for the reasons given in the supreme court.

Now, it is to be remarked that *Barr* v. *Fleming* was argued in the supreme court, at the November Term, 1897, and the opinion of Mr. Justice Dixon delivered at the February Term, 1898; and that the counsel were the same as those who have argued this matter before me, and the opinion of Mr. Justice Dixon was delivered at or about the time the matter of priorities in this case was under consideration by the master. And I refer to the case not only for the purpose of pointing out the circumstances under which counsel herein failed to make objection before the master, but also to show the indisposition of the court to disturb the effect of the docketing except when compelled to do so by the point being taken in the first instance. In other words, they met technicality by technicality.

Motion is also made by the counsel of the judgment creditors who failed to appear before the master to be permitted to share in the fund in court, on the ground that his failure was due to the supposition that the property would not bring enough to reach his judgment, and that his client ought not to be prejudiced by his failure. But the complete answer is that his judgment is subject to the same defect as these, and while the court is indisposed to disturb what was done in favor of the judgment creditors who obtained their decree, it is quite impossible that it should open the decree in favor of one whose docketing is defective, and who was not so fortunate as the others.

I will advise a decree in accordance with the above views.